**Stuart A. KINZLER, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**NEW YORK STOCK EXCHANGE et al., Defendants.**

**No. 70 Civ. 5186.**

United States District Court, S. D. New York.

June 30, 1971.

Leibowitt, Milberg, Weiss & Fox, by Melvyn I. Weiss, New York City, Aaron

M. Fine, Harold E. Kohn, Philadelphia, Pa., for plaintiff.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant New York Stock Exchange.

Brown, Wood, Fuller, Caldwell & Ivey, New York City, for defendants Merrill Lynch, Pierce, Fenner & Smith and Goodbody & Co.

## MEMORANDUM

BONSAL, District Judge.

This private antitrust action was brought by plaintiff, Stuart Kinzler, a registered representative employed in the Stamford, Connecticut office of Goodbody & Co. ("Goodbody") on his own behalf and on behalf of a purported class consisting of the 1500 registered representatives employed by Goodbody during the pendency of an alleged freeze by the New York Stock Exchange ("the Exchange") in the processing of transfer applications by Goodbody registered representatives to other brokerage firms. Plaintiff's complaint charges that there is a combination and conspiracy in restraint of trade between the Exchange, Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") and Goodbody, in violation of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, which is based upon the institution of the alleged freeze; that the purported class's right to be protected against involuntary servitude under 18 U.S.C. § 1581, 42 U.S.C. § 1994 and the Thirteenth Amendment of the United States Constitution has been violated by the defendants; and that the defendants through the alleged freeze have wrongfully interfered with the purported class's contractual relations.

Plaintiff now moves pursuant to Rule 23, F.R.Civ.P. and Civil Rule 11A of this court for an order determining that this action may be maintained as a class action.

Plaintiff alleges the following facts: On October 19, 1970, after Goodbody was notified by the Exchange that unless it raised substantial additional capital by November 5, 1970, its operations might be suspended for violation of the Exchange's net capital rules, the Exchange stopped approving transfers of Goodbody registered representatives to other brokerage firms. On or about November 15, 1970, Goodbody and Merrill Lynch entered into an agreement, with the approval of the Exchange, for Merrill Lynch to acquire Goodbody's business. An essential term of this agreement was that the freeze on transfers of Goodbody representatives remain in effect.

Plaintiff contends that during the alleged freeze, "as a result of Goodbody's precarious financial condition" a number of its customers transferred their accounts to other brokerage firms and that the registered representatives who had handled these accounts were faced with the complete erosion of customer relationships which they had built up over the years because the alleged freeze prevented them from following their customers out of Goodbody.

On December 1, 1970, plaintiff moved before Judge Croake for a preliminary injunction restraining the defendants from preventing transfers of Goodbody registered representatives to other brokerage firms, and on December 15, 1970 Judge Croake held an evidentiary hearing on the motion. Plaintiff testified that during the alleged freeze he had made an unsuccessful inquiry about employment with Kidder Peabody & Co. and that he had not applied for a transfer because he thought such an application would have been futile. Plaintiff also testified that as a result of the alleged freeze he had lost at least three of his customers to other brokerage firms and that approximately twelve other Goodbody registered representatives had informed him that they had also lost customers during the freeze.

At the hearing, it was brought to the court's attention that as of December 11, 1970 the Exchange had resumed the processing of Goodbody's registered rep-

resentatives' transfer applications. Sixteen applications which had been pending were approved on that day, and the following day seven transfer applications were received and subsequently approved.

On December 21, 1970, Judge Croake denied plaintiff's motion for a preliminary injunction on the ground that the renewal of the processing of transfer applications rendered the motion moot.

The defendants deny the existence of a conspiracy or combination in restraint of trade between them and contend that the plaintiff has failed to state a claim upon which relief can be granted, that exclusive and primary jurisdiction over this action is vested in the Securities and Exchange Commission, and that the delay in processing was justified and reasonable in that it was instituted for the purpose of protecting Goodbody customers and the public at large from the detrimental effects of a cannibalization of Goodbody by other brokerage firms.

█ In order to proceed as a class action, plaintiff must satisfy all the prerequisites of Rule 23(a), F.R.Civ.P. and must satisfy the court that his action falls within one of the subsections of Rule 23(b), F.R.Civ.P. The threshold issues raised on this motion are (1) whether the plaintiff is a member of the class having a claim against the defendants and (2) whether the requirements of Rule 23(a) (1), F.R.Civ.P., have been met.

Plaintiff asserts that he represents a class consisting of the 1500 registered representatives employed by Goodbody at the time that the alleged freeze was instituted. Defendants say that only registered representatives who (1) applied for a transfer during the alleged freeze or immediately thereafter, or (2) who inquired about obtaining a transfer during the alleged freeze, or (3) who had an opportunity to transfer out of Goodbody during the alleged freeze and were inhibited from doing so, are proper members of the class. Defendants estimate that the class would number approximately 28 and contend that this class does not satisfy the numerosity requirement of Rule 23(a) (1). Moreover, defendants contend that plaintiff is not a member of the class since he has not shown that he had an opportunity to transfer to another brokerage firm.

Plaintiff in his complaint and in his papers in support of this motion defines the class as encompassing "those who applied for transfer in vain and those who knew that they were frozen, did not make the vain request, but nevertheless saw their accounts being transferred to other brokerage houses." (Plaintiff's reply memorandum, p. 5.) A registered representative who was unable to follow his customers out of Goodbody would have been injured because of the alleged freeze whether or not he attempted to transfer to another brokerage firm. On the other hand, it does not follow that a registered representative who made a transfer application would be injured because of the alleged freeze if none of his customers abandoned him. Therefore, the court defines the class as consisting of those Goodbody registered representatives who lost customers to other brokerage firms as a result of Goodbody's precarious financial condition and were unable to follow these customers out of Goodbody because of the alleged freeze.

While plaintiff appears to be a member of this class, it does not follow that all other Goodbody registered representatives are also members of this class.

█ Under Rule 23(a) (1), F.R.Civ. P., the burden is on the plaintiff to make a positive showing "that the members of the alleged class are so numerous as to make it impracticable to bring them all before the court." Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968). As was the situation in *Demarco, supra,* the evidence as to the size of the class and the impracticability of joinder is purely speculative. See also Cannon v. Texas Gulf Sulphur Co., 53 F.R.D. 216 (S.D. N.Y.1971); William Goldman Theatres,

Inc. v. Paramount Film Distributing Corp., 49 F.R.D. 35 (E.D.Pa.1969). Plaintiff has failed to show how many Goodbody registered representatives lost customers to other brokerage firms during the freeze. Plaintiff has also failed to show that the Goodbody registered representatives who lost customers are so geographically spread out as to make joinder impracticable or that the damages to each are so small as to make individual prosecutions of their actions impracticable. Therefore, on this record the court cannot find that "the class is so numerous that joinder of all members is impracticable." Rule 23(a) (1), F.R. Civ.P. Plaintiff's reliance on Fidelis Corp. v. Litton Industries, Inc., 293 F. Supp. 164 (S.D.N.Y.1968), in which the court held that a class of between 35 and 70 satisfied the numerosity requirement of Rule 23(a) (1), is misplaced since in that case there was an evidentiary basis for the court's determination.

Plaintiff's motion for an order declaring that a class action may be maintained pursuant to Rule 23 is denied without prejudice.

It is so ordered.