**DEERE & COMPANY, a Delaware corporation, Plaintiff,**

v.

**Clark ZAHM, James Guy and Phillip Emert, Defendant.**

No. 93–CV–2139–JWL.

United States District Court, D. Kansas.

Oct. 14, 1993.

---

Mark A. Ferguson, Lathrop & Norquist, Overland Park, KS, Daniel M. Dibble, Timothy K. McNamara, Lathrop & Norquist, Kansas City, MO, for plaintiff.

Byron C. Loudon, McDowell, Rice & Smith, P.C., Kansas City, KS, for Clark Zahm and James Guy.

Phillip A. Miller, Watson, Ess, Marshall & Enggas, Kansas City, MO, Steven B. Moore, Watson, Ess, Marshall & Enggas, Olathe, KS, for Phillip Emert.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

This matter is before the court on the motion of defendants Clark Zahm and James Guy to dismiss plaintiff's first amended complaint (Doc. # 29). The plaintiff, Deere & Company ("Deere"), claims the defendants were part of a conspiracy to defraud it by knowingly permitting their names to be forged on promissory notes and security agreements in favor of Deere. Plaintiff also brings claims of negligence as well as ratification of the forgeries and execution of the note. Plaintiff seeks punitive damages on the fraud-related claim. Defendants seek dismissal of each claim. For the reasons set forth below, the motion of defendants Clark Zahm ("Zahm") and James Guy ("Guy") is granted in part and denied in part.

### I.  Facts

The following facts, as alleged in the first amended complaint, are accepted as true for purposes of this motion to dismiss. The plaintiff, Deere, is a manufacturer and seller, among other items, of farm implements and

related products. Southeast Equipment, Inc. ("Southeast"), whose sole shareholder and officer was Stan Gavin, was formerly a dealer for Deere in Oswego, Kansas. Clark Zahm and James Guy were employees of Southeast Equipment, Inc.

Deere finances sales of its products to retail purchasers. The plaintiff alleges that Stan Gavin devised a conspiracy in 1991 or earlier to defraud Deere by executing promissory notes and security agreements in favor of Deere which were not actually connected to any retail sales. Deere accepted these notes and gave value for them by crediting the account of Southeast. On December 19, 1992, Deere terminated its relationship with the Southeast dealership.

Plaintiff alleges that the defendants Zahm and Guy conspired with Gavin to defraud Deere.[1] The defendants joined in Gavin's conspiracy to commit fraud by doing the following: (1) obtaining actual knowledge that Gavin had executed false and fraudulent notes naming them as maker; (2) receiving notices from the plaintiff that advised defendants of payment schedules for the notes; (3) conferring with Gavin about the notes; (4) and by being informed by Gavin that he had executed the notes and received value for them. First Amended Complaint ¶ 6. The plaintiff further alleges that defendants accomplished the conspiracy to defraud by: (1) failing to renounce the validity of all the notes and security agreements naming them as maker; (2) failing to place the plaintiff on notice of the false and fraudulent character of the notes and the security agreements naming them as maker; and (3) permitting Gavin to continue to create additional false and fraudulent notes and security agreements in their names and those of other persons without renouncing them or notifying Deere that the notes were not genuine. First Amended Complaint ¶ 7.

Plaintiff further alleges that it is entitled to punitive damages for this fraudulent conspiracy. In Count III of the complaint, plaintiff alleges in the alternative that based on the above-mentioned facts defendants Zahm and Guy were negligent. Finally, in Count IV, Deere alleges that Zahm and Guy ratified the execution of the notes and are therefore liable to plaintiff.

## II. Conspiracy to Commit Fraud

Deere alleges that Zahm and Guy participated with Gavin in conspiring to defraud Deere. Defendants argue that the allegations are insufficient because: (1) conspiracy was not pled with specificity; and (2) plaintiff does not allege that defendants had a duty to speak and thus does not state a claim for fraud by silence. For the reasons set forth below, the court denies defendants' motion to dismiss plaintiff's conspiracy claim on both grounds.

### A. Rule 9(b)

The defendants first argue that the plaintiff has failed to plead a conspiracy to commit fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Conspiracy to defraud allegations must also comply with the precepts of Rule 9(b). *See Robison v. Caster*, 356 F.2d 924 (7th Cir.1966).

A plaintiff alleging fraud must know what his claim is when he files it. *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 990 (10th Cir.1992). "Rule 9(b) does not ... require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake." *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986). Rule 9(b) is to be read "in conjunction with the [notice] pleading requirements of Rule 8". *Id.* "Perhaps the

---

1. Curiously, plaintiff states in its response to defendants' motion to dismiss that it "does not allege a separate count of civil conspiracy but rather alleges that defendants participated in and were aware of the scheme perpetrated by Mr. Gavin." Plaintiff's Suggestions In Opposition to Defendant's Motion to Dismiss at 8. Despite this confusing statement, the court is convinced that Count I of the plaintiff's first amended complaint clearly alleges a specific claim of civil conspiracy to commit fraud and that it further alleges that Zahm and Guy participated in the conspiracy.

most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading." Wright & Miller, Federal Practice & Procedure, Civil 2d § 1298 at 648 (1990 ed.).

■ The plaintiff has attached four promissory notes and security agreements with the alleged forged signatures of Zahm, Guy and another Southeast employee, used in connection with the alleged fraudulent scheme to induce Deere to lend money secured by non-existent goods. These exhibits are incorporated by reference into the complaint and become part of it. The notes and security agreements, taken in connection with the allegations of the complaint, set out the factual specifics regarding the alleged fraud that was the object of the conspiracy. Gavin allegedly represented that he was granting security interests in combines, tractors and other equipment which plaintiff asserts did not actually exist. He allegedly made these false representations to Deere on October 5, 1991, October 9, 1991, November 9, 1991 and October 20, 1990. All of the notes were executed in Oswego, Kansas. Thus, the plaintiff has sufficiently identified the circumstances constituting the fraud it claims was the object of the conspiracy and has complied with the requirements of Rule 9(b).

■ Detailing the fraud committed by Gavin is not alone sufficient for plaintiffs to withstand this motion to dismiss. Each element of civil conspiracy, including the individual defendants' involvement in the conspiracy, must be pled with some specificity. A plaintiff must make more than conclusory allegations of the existence of a conspiracy; it must set forth some supporting factual details in order to sustain a claim for relief. See, e.g., *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159, 1162–63 (10th Cir.1991) (conclusory allegation of conspiracy in connection with adverse employment action insufficient to state a claim under § 1985(3)). See also *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir.1989) (plaintiff must provide "specific facts showing agreement and concerted ac-

tion" to sustain civil rights conspiracy claim); *Clulow v. Oklahoma*, 700 F.2d 1291, 1296, 1303 (10th Cir.1983) (conclusory allegation of conspiracy without supporting factual averments insufficient to state claim). However, "Rule 9(b) does not work to penalize a plaintiff merely because he was not privy to, and, therefore, cannot plead the details of, the inner workings of a group of defendants who allegedly acted in concert to defraud him." *Kravetz v. Brukenfeld*, 591 F.Supp. 1383, 1388 n. 9 (S.D.N.Y.1984).

■ The court finds that the complaint states allegations of a conspiracy sufficient to give the defendants fair notice of what the plaintiff's claim is and the grounds on which it rests. As noted above, the exact dates and places of alleged misrepresentations are contained in the first amended complaint. The plaintiff also alleges that notices were sent to defendants Zahm and Guy advising them of payment schedules for the notes, from which a reasonable person can infer that the defendants were aware of the scheme. Plaintiff also alleges that each defendant conferred with Gavin and that Gavin told them of the scheme. In essence, Deere alleges that defendants participated in the conspiracy by knowingly allowing their names to be forged. A complaint which alleges the manner in which a conspiracy to defraud is to be carried out and the role of the defendants in the conspiracy is sufficient to withstand a motion to dismiss. *Lochhead v. Alacano*, 697 F.Supp. 406, 418 (D.Utah 1988) (citing *Kravetz v. Brukenfeld*, 591 F.Supp. at 1388).

### B. Failure to State a Claim

Defendants' second argument is more complicated. It appears that defendants argue that even if the allegations are sufficiently specific, they do not state a claim for civil conspiracy. The court finds that Deere has stated a claim for civil conspiracy to commit fraud and defendants' motion to dismiss is denied on this ground.

■ A court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to

relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1115 (10th Cir. 1991). The pleadings are liberally construed, and all reasonable inferences are viewed in favor of the plaintiff. Fed.R.Civ.P. 8(a); *Lafoy v. HMO Colorado*, 988 F.2d 97, 98 (10th Cir.1993). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ In Kansas, whose decisional law controls this diversity case, the elements of a civil conspiracy include: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of an action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153 (1984). The first, second, and fifth elements have been met for purposes of this motion. In essence, defendants deny the sufficiency of the pleading concerning elements three and four. They argue that plaintiffs have not alleged Zahm or Guy knew of the forgeries before they occurred and, thus, no agreement was possible. Similarly, they argue that plaintiff cannot point to any duty on the part of Zahm and Guy to speak and, thus, they could not have committed any unlawful acts.

The Kansas Supreme Court examined the elements of a civil conspiracy in the context of securities fraud in *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 811 P.2d 1220 (1991). In *Mays*, the defendants asserted that they were mere business associates of a person who unilaterally engaged in illegal conduct, and that their innocent and passive participation did not constitute a civil conspiracy. 811 P.2d at 1226. In deciding whether there could be a conspiracy the court looked to analogous principles of criminal conspiracy. The court noted, "[O]nce a conspiracy is formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy. It is not necessary for a conspirator to have planned or to have known about the injurious action as long as the purpose of the tortious act was to advance the overall object of the conspiracy." *Id.* at 1228 (citing *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C.Cir.1983)). Plaintiff has sufficiently alleged that defendants' silence and knowledge of the forgeries advanced the overall object of the conspiracy: to defraud plaintiff.

The *Mays* court also found that it is not necessary that conspirators know of an overt act before it occurs in order to be held liable. "Yet, as was made clear in *Halberstam v. Welch*, 705 F.2d 472 (D.C.Cir.1983), and *Mosley v. Unruh*, 150 Kan. 469, 95 P.2d 537 (1939), a conspirator can be liable based upon facts and circumstances that occur subsequent to the overt act causing the injury." *Id.*, 811 P.2d at 1231. Thus, plaintiff has sufficiently alleged, for purposes of this motion to dismiss, that defendants' knowledge of the forgeries and acquiescence in them may be understood as a tacit agreement to defraud plaintiff. "[I]t is settled that '[n]o formal agreement is necessary to constitute an unlawful conspiracy' and that 'business behavior is admissible circumstantial evidence from which the fact finder may infer agreement.'" *Norfolk Monument Co. v. Woodlawn Memorial Gardens, Inc.*, 394 U.S. 700, 704, 89 S.Ct. 1391, 1393, 22 L.Ed.2d 658 (1969) (per curiam) (quoting *American Tobacco Co. v. United States*, 328 U.S. 781, 809, 66 S.Ct. 1125, 1138, 90 L.Ed. 1575 and *Theatre Enter's. v. Paramount Film Distrib. Co.*, 346 U.S. 537, 540, 74 S.Ct. 257, 259, 98 L.Ed. 273 (1954)).

Finally, defendants argue that plaintiff has not alleged fraud because plaintiff can point to no duty to speak. The court agrees that plaintiff has not set forth facts that would create a duty to speak sufficient to support individual claims of fraud by silence against Zahm and Guy. However, defendants have not shown that a civil conspiracy to commit fraud requires that each and every conspirator must be able to be held liable for the underlying fraud. The court is not persuaded that this is the case. The court finds that the allegation of silence of the defendants accompanied by an alleged tacit agreement that the silence perpetuate a fraudulent

352

scheme states a cause of action for civil conspiracy. Thus, defendants have not shown beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle it to relief and defendants' motion to dismiss the conspiracy claim is denied. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### III. Punitive Damages

■ Defendants argue that because Deere has not properly pled a civil conspiracy to commit fraud, it cannot properly claim punitive damages. Because the court has found that the plaintiff states a claim for civil conspiracy, its claim for punitive damages cannot be denied on this ground. An award of punitive damages must be determined pursuant to K.S.A. § 60–3701. *Gillespie v. Seymour,* 250 Kan. 123, 145–46, 823 P.2d 782 (1992). This section states:

(c) In any civil action where claims for exemplary or punitive damages are included, the plaintiff shall have the burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice.

Kan.Stat.Ann. § 60–3701 (Supp.1992). Plaintiff has alleged that the defendants conspired to commit fraud. No Kansas case has specifically held that an allegation of a conspiracy to commit fraud is alone sufficient to support a claim for punitive damages against a particular conspirator. The statute, however, states that plaintiffs may be awarded punitive damages when defendants act with willful conduct.

■ Willful conduct is defined as conduct performed with a designed purpose or intent on the part of a person to do wrong or to cause injury. *Lawrence v. Phillips Petroleum Co.,* 6 Kan.App.2d 272, 627 P.2d 1168, 1169 (1981); P.I.K.2d 3.03. In essence, plaintiff has alleged that the defendants conspired with the intent to do wrong: defendants conspired to defraud the plaintiff and

cause injury to it. Thus, the court finds that the pleadings allege willful conduct sufficient to support a claim of punitive damages. Defendants' motion to dismiss the plaintiff's punitive damages claim is denied.[2]

### IV. Negligence

Defendants argue that Deere fails to state a cause of action in negligence. For the reasons set forth below, the court grants defendants' motion to dismiss the plaintiff's negligence claim.

In order to state a claim for negligence, Deere must allege that the defendants Zahm and Guy breached a duty of care owed to the plaintiff. *Tersiner v. Union Pacific R. Co.,* 740 F.Supp. 1519, 1524 (D.Kan.1990). In Count III of its amended complaint, plaintiff simply alleges that "defendants were negligent in failing to renounce the validity of the notes and to disclaim any liability on the notes and in failing to put plaintiff on notice of such facts." This is insufficient to allege a duty on the part of the defendants to inform Deere of any alleged fraud.

■ The law in Kansas is clear that when a person is asked a specific question regarding the financial status of a third party, there is a duty to answer truthfully even when there is no fiduciary or contractual relationship between the parties. *DuShane v. Union Nat'l Bank,* 223 Kan. 755, 576 P.2d 674, 679–80 (1978). However, there is no such duty concerning omissions. *Id.* at 679. Absent a duty to speak, there can be no negligence when a party fails to supply information to a third party. *See Metal Trading Services v. Trans–World Services,* 781 F.Supp. 1539, 1545 (D.Kan.1991). A duty to speak will arise when there is a contractual or fiduciary relationship between parties. *See Denison State Bank v. Madeira,* 230 Kan. 684, 640 P.2d 1235, 1240 (1982).

■ Deere does not allege in its first amended complaint that any contractual or fiduciary relationship existed between it and Zahm or Guy. Nor does it refer in its complaint to any statute creating a duty on the

2. The court notes that it deems the Kansas punitive damages scheme to be substantive in nature and, thus, it follows the two step process set out in K.S.A. § 60–3702 determining entitlement to punitive damages in the original trial with a subsequent proceeding determining the amount.

part of a third party to take affirmative steps to reveal a suspected fraud of which he or she has knowledge. Instead, in its response to defendants' motion to dismiss, plaintiff asserts that K.S.A. § 84-3-406 creates a duty to speak.[3] This section is inapplicable as it simply precludes a negligent party from asserting forgery as a defense against a holder in due course.

■ When considering a motion to dismiss for failure to state a claim, a court must distinguish between well-pled facts and conclusory allegations. *See Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). Plaintiff has alleged no facts, nor can it point to any case law, that creates a duty on the part of defendants Zahm and Guy to notify Deere of any alleged forgeries by defendant Gavin. Defendants' motion to dismiss plaintiff's claims of negligence on the part of Zahm and Guy is granted.

*V. Ratification*

Defendants move for dismissal of plaintiff's claim that Zahm and Guy ratified the alleged forged signatures. The court finds that plaintiff has sufficiently alleged a claim for ratification and, thus, defendants' motion is denied.

■ Plaintiff's claim of ratification is not subject to the requirements of Rule 9(b). Under F.R.C.P. 8, a pleading need only set forth a short and plain statement of the claim showing that the pleader is entitled to relief. This court may not dismiss plaintiff's claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its theory. *Conley,* 355 U.S. at 45-46, 78 S.Ct. at 101-02.

■ According to K.S.A. § 84-3-403, an unauthorized signature may be ratified. *See* Kan.Stat.Ann. § 84-3-403(a) (Supp.1992).

The Uniform Commercial Code's official comment to this section states:

> "[This section] settles the conflict which has existed in the decisions as to whether a forgery may be ratified. A forged signature may at least be adopted; and the word "ratified" is used in order to make it clear that the adoption is retroactive, and that it may be found from conduct as well as from express statements. Thus, it may be found from the retention of benefits received in the transaction with knowledge of the unauthorized signature; and although the forger is not an agent, the ratification is governed by the same rules and principles as if he were."

*See* Kan.Stat.Ann. § 84-3-404 (1983).[4] Deere has alleged facts sufficient to withstand a motion to dismiss in that it has alleged that defendants Zahm and Guy knew of the forgeries of Stan Gavin and retroactively adopted the signatures as their own. Thus, the court denies defendants' motion to dismiss the ratification claims.

**IT IS THEREFORE ORDERED BY THE COURT** that the motion of defendants Clark Zahm and James Guy to dismiss plaintiff's first amended complaint (Doc. # 29) is granted in part and denied in part. The court grants defendants' motion to dismiss plaintiff's claim of negligence against them. The court denies defendants' motion to dismiss the conspiracy claim, punitive damages claim and ratification claim.

**IT IS SO ORDERED.**

---

**3.** This section states: "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business." Kan.Stat.Ann. § 84-3-406 (1983 & Supp.1991).

**4.** In the revision of article 3 of the UCC in 1991, old sections of the code were repealed and the numbers reassigned to the new sections of the revised code. To view the UCC comment, it is necessary to refer to Volume 7 of the K.S.A., copyright 1983.